FILED
2010 Apr-20 AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MARTHA MOORE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 7:08-CV-02430-LSC |
| | ] |
| PILOT TRAVEL CENTERS, LLC | ] |
| | ] |
| Defendant. | ] |

Memorandum of Opinion

I.   Introduction.

The Court has for consideration a motion for summary judgment filed on February 4, 2010, by the Defendant, Pilot Travel Centers, LLC ("Pilot" or "Defendant"). (Doc. 28) This action was filed on December 31, 2008, by Martha Moore ("Plaintiff"), later amended on April 6, 2009, claiming that an injury she suffered when a sidewalk grate collapsed at a Pilot Travel Center was caused by Defendant's negligence or wantonness. Pilot has moved for summary judgment on all of Plaintiff's claims. This motion has been briefed by both parties and is now ripe for decision. Upon full consideration of the legal arguments and evidence presented, Defendant's motion for summary

judgment is DENIED as to Plaintiff's negligence claim and GRANTED as to Plaintiff's Wantonness claim.

II.     Facts.[1]

On November 14, 2007, Plaintiff, a truck driver, stopped at a convenience store owned and operated by Pilot in Tuscaloosa, Alabama. While walking on the sidewalk leading into the store, Plaintiff stepped onto a plastic grate that covered a drainage hole.  The grate collapsed, causing her left foot and leg to go down into the hole beneath the cover.  Although an ambulance was called to the scene, Plaintiff refused medical treatment and continued along her route.  Six days after the accident, Plaintiff went to an emergency room in Dallas, Texas, complaining of pain in her legs.  X-rays appeared to show no damage to her artificial hip.  Plaintiff's pain persisted, and a month after the accident, x-rays by Dr. Ronald Linsday, an orthopedic surgeon, revealed that the artificial hip was no longer fully

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

attached to Plaintiff's bone. Plaintiff required two surgeries to repair her artificial hip. Plaintiff maintains that the incident at the Pilot store caused her injuries, resulting in serious and permanent damage and pain.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Pilot has moved for summary judgment on all of Plaintiff's claims. Plaintiff alleges that Pilot negligently or wantonly failed to maintain the sidewalk grate in question or failed to perform inspections that would have revealed the grate's defective state.

   A.   Negligence.

Negligence "is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995) (citing *Elba Wood Prods., Inc. v. Brackin*, 356 So. 2d 119 (Ala.1978)). "[S]ummary judgment is rarely appropriate as to a claim alleging negligence," because these actions "almost always present factual issues of causation and of the standard of care that should have been exercised." *Nunnelee v. City of Decatur*, 643 So. 2d 543, 545 (Ala. 1993). Nevertheless, the Alabama Supreme Court has found summary judgment to be appropriate in various instances involving negligence claims where the evidence is clearly in favor of the movant. *See, e.g., Hines v. Hardy*, 567 So. 2d 1283, 1285 (Ala. 1990); *Duffy v. Bel Air Corp.*, 481 So. 2d 872, 875 (Ala. 1985); *Bennett v. Cole*, 426 So. 2d 829, 831 (Ala. Civ. App. 1981), *aff'd Ex parte Bennett*, 426 So. 2d 832 (Ala. 1982); *Shaw v. City of Lipscomb*, 380 So. 2d 812, 815 (Ala. 1980).

In order to recover under a negligence claim, the plaintiff bears the burden of proving (1) the existence of a duty owed by the defendant, (2) a

breach of that duty, (3) proximate causation between the defendant's conduct and plaintiff's injury, and (4) damage or injury. *See S.B. v. Saint James Sch.*, 959 So. 2d 72, 97 (Ala. 2006). At the summary judgment stage, the Court will consider whether defendants have demonstrated that there is no genuine issue of material fact left for consideration by a jury on a negligence claim. *See Hunt*, 963 So. 2d at 124.

      1.    Duty.

The duty owed by a property owner depends on the relationship between the parties. *Lloyd v. Joseph*, 496 So. 2d 771, 773 (Ala. 1986). One who enters the premises of a property owner to "bestow some material or commercial benefit on the landowner" is an invitee. *Id*. Property owners are required to use "reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation . . . or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it." *Lamson & Sessions Bolt Co. v. McCarty*, 234 Ala. 60, 63 (Ala. 1937). This duty includes, "(a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is

ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation." *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980) (citations omitted).

In delineating the duties that a property owner owes to an invitee, the Alabama Supreme Court has drawn a distinction between the ordinary slip and fall case and injuries involving a fixture, noting, "Unlike a spilled substance, a defective threshold or a cart or a display rack is a fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store's customers." *Mims v. Jack's Restaurant*, 565 So. 2d 609, 611 (Ala. 1990). The Court in *Mims* held, "[I]n cases where the alleged defect is a part of the premises (in this case, a loose threshold in the main entrance of a restaurant), once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident." *Id*. at 610. The court explained this

position in *Norris v. Wal-Mart Stores*, reversing a directed verdict in a case involving boxes that fell from defective shelves. 628 So. 2d 475 (Ala. 1993). The court wrote, "where the alleged defect or instrumentality is a part of the premises, such as a display rack, and not a foreign substance, such as spilled food, for example, the owner of the premises has a duty to provide ordinary and reasonable maintenance of those premises in order to meet its duty to its invitees." *Id.* at 478. In instances where the defect in question is a fixture, it is clear that a land owner has a duty to ensure reasonable inspection and maintenance of that fixture.

The duty of the land owner is even more extensive if he creates the defect in question. In *Wal-mart Stores, Inc. v. Rolin,* the Alabama Supreme Court dealt with a case in which a customer was injured by a barbeque grill display built by employees of the store. 813 So. 2d 861 (Ala. 2001). The Court reiterated, "When the defendant or his employees have affirmatively created the dangerous condition, the plaintiff need not introduce evidence that the defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts presume notice." *Id.* at 864 (quoting *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 2d 232, 234 (Ala. 1993)).

As an initial matter, it appears that the Plaintiff does not contend that Pilot had knowledge of the danger posed by the defective grate. Plaintiff notes in its response to Pilot's undisputed facts, "Ms. Moore agrees that Pilot has not produced any evidence that it was aware of 'any problems or complaints'" with the grate in question. (Doc. 37 at 6.) Plaintiff argues instead that "this case is not governed by the traditional 'notice' role." (Doc. 37 at 11.) While Pilot may not have known of the defective grate, the question nevertheless remains whether Pilot was itself responsible for creating the defect in question or should have, through the exercise of reasonable care, discovered and remedied the problem.

First, the Court must determine if the defective grate was a fixture. It is evident that it was. In *Norris*, the Alabama Supreme Court listed "a defective threshold or a cart or a display rack," as examples of fixtures that require inspection and maintenance. 565 So. 2d at 611. Fixtures have been distinguished from "spilled substance[s]" and boxes sitting in the center of an aisle. *Id.*; *Jackson v. Wal-Mart Stores, Inc.,* 2010 WL 320491 ( S.D. Ala. Jan. 20, 2010). It is evident that, unlike spilled substances and boxes, the grate in question and the hole it covered were a permanent aspect of the

property and clearly in the nature of a fixture. *See LaFarge Bldg. Materials, Inc. v. Stribling*, 880 So. 2d 415, 420 (Ala. 2003) (setting forth various criteria for "determining whether an item is a fixture in a context other than a landlord/tenant relationship"). Furthermore, Pilot's operations manual recognizes the need to perform regular inspections of grates on its property. Item 33 of its Weekly Store Safety Inspection Checklist contained in Pilot's Operations Manual asks, "Are entrance area floor mats and grates in good condition?"[2] (Doc. 35-6 at 33.) The grate in question covers a hole sitting only a few feet from the entrance of the Pilot and directly in front of a TripPak Express mailbox. (Doc. 35, Ex. C-2.) The Court therefore finds that the grate in question was a fixture requiring reasonable inspection and repair. Therefore, although there is no evidence that Pilot affirmatively created the defective drain cover, it is evident that Pilot had a duty to exercise reasonable care in insuring that the drain cover was not damaged or defective through ordinary and reasonable maintenance.

---

[2] Pilot's Claims Manager, William Beuchat ("Beuchat"), stated in his deposition that the Operations Manuel was in place and applicable at the Pilot store where Plaintiff's accident occurred. (Doc. 35, Ex. D, Beuchat Depo. at 89:7-13.)

2. Breach of Duty.

As discussed above, in the event the defect is part of the premises, "the owner of the premises has a duty to provide ordinary and reasonable maintenance of those premises in order to meet its duty to its invitees." *Norris*, 628 So. 2d at 478. Pilot's Operations Manual acknowledges Pilot's duty in this area, stating, "As business operators, we have a duty to maintain a safe environment for our customers and employees. This obligation requires that we have an inspection plan in place, that we execute that plan routinely, and that we correct hazards found during those inspections as quickly as possible . . . Failure to perform our duty to inspect . . . will usually result in Pilot being held responsible if the hazard is the proximate cause of a customer's injuries." (Doc. 35-6 at 27.) It is not surprising then that Beuchat stated in his deposition that Pilot had a system for conducting "weekly and daily inspections for the purposes of preventing accidents and maintaining customer . . . safety." (Doc. 35, Ex. D, Beuchat Depo. at 86:15-22.)

Pilot's Operations Manual also stresses the importance of documenting inspections, stating, "Documenting our inspections is very important. If a

customer is injured and the allegation is made that we have been negligent in inspecting and correcting, we will need to prove that we have an inspection routine established and have completed it responsibly." (Doc. 35-6 at 28.) Pilot maintains a document retention policy to ensure that it can prove that appropriate inspections have been conducted. Pilot's Operations Manual states, "The following inspections forms are designed to guide your hourly and weekly inspections and should be retained in your 'Safety Inspection' file as documentation of the inspection and proof that we have not breached any duty owed to our customers." *Id.* One of these checklists, as noted above, contains the question, "Are entrance area floor mats and grates in good condition?" *Id.* at 33. Following an accident, Pilot's employees are required to send to Pilot's Risk Management Department copies of any documentation of inspections that preceded the accident in question. (Doc. 35, Ex. D, Beuchat Depo. at 76.)

Despite these company policies, Pilot has been unable to produce any completed quarterly, monthly, weekly, daily, or hourly inspections regarding the area in which the Plaintiff's accident occurred, despite receiving notice only a month after her accident. *See id.* at 106-120.

Beuchat testified that he had no documentary evidence of an inspection on November 14, 2007, the day of the accident, or any documentary evidence that any inspection occurred at any time in 2007. *Id.* at 106:18-107:2.

Furthermore, Pilot had not implemented its Safety Coordinator Program at the Tuscaloosa Pilot location. (Doc. 35, Ex. J, Smith Depo. at 21:21-22:1.) Safety Coordinators "have primary responsibilities for safety and preventive maintenance at the location and will be involved in the reporting and documentation of all accidents." (Doc. 35-7 at 37.) In fact, Mark Smith, the general manager for the Pilot location in question, was generally unaware of the existence of the position of Safety Coordinator. *See id.* at 146.

Pilot argues that it is "illogical" that "Pilot's inability to produce records documenting the inspections" creates a factual question as to whether inspections were actually conducted. (Doc. 38 at 13.) The Court disagrees. Pilot has implemented a certain policy of inspection and documentation precisely to ensure that when a situation such as this arises, it will have evidentiary support that it has met its responsibilities. That Pilot failed to follow its policies in this instances is evidence that, in fact,

no such inspections were performed. Given that no documentation of inspections exists, the determination of whether inspections were conducted will be made based on a credibility analysis of Pilot's employees by the jury. Therefore, as to the question of whether Pilot breached its duty to perform inspections and maintenance, summary judgment is not appropriate.

       3.      Proximate Cause and Damages.

In order to establish proximate cause, the "injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury." *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976). Pilot argues that Plaintiff has failed to meet this burden because of conflicting evidence regarding whether the damage to Plaintiff's right leg and right hip was caused by her accident. Plaintiff has provided testimony by a medical expert that, to a reasonable degree of medical certainty, the injuries were related to the accident. (Doc. 35, Ex. M, Lindsey Depo. at 45-47.) Dr. Lindsey, however, did not consider the testimony of Dr. Reddy and Dr. Welch that x-rays taken six days following the accident indicated that

Plaintiff's artificial hip was still intact.[3] (Doc. 28, Ex. 6, Reddy Depo. at 5, 7-8; Ex. 7, Welch Depo. at 6, 8-11.) The conflict between these experts appears to this Court to be the quintessential question of fact. Therefore, the Court finds that summary judgment is not proper as to the proximate cause and damages aspects of Plaintiff's negligence claims.

B.   Wantonness.

Wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *McDougle v. Shaddrix*, 534 So. 2d 228, 231 (Ala. 1988). Thus, wantonness requires "some degree of conscious culpability." *Rommell v. Automobile Racing Club, Inc.*, 964 F.2d 1090, 1096 - 97 (11th Cir. Ala. 1992). Unless there is a "total lack of evidence from which the jury could

---

[3] Pilot argues that based on these x-rays taken six days following the accident, the Court should find that Plaintiff cannot show that the accident in question was the proximate cause of damage to Plaintiff's hip. In his deposition, however, Dr. Reddy, the radiologist involved, admitted that he did not obtain lateral or cross-table lateral x-rays that one would normally order if there was a suspicion of prosthetic loosening or hip fracture. Therefore, it remains a question of fact whether the x-rays conclusively show that Plaintiff, despite her descriptions of pain at an eight on a ten scale and subsequent required surgeries, was not seriously injured in her fall. (Doc. 28, Ex. 6, Reddy Depo. at 16-17.)

reasonably infer wantonness," the question of wantonness should be submitted to the jury.  *McDougle*, 534 So. 2d at 231.

Plaintiff has failed to show that Pilot acted with any degree of conscious culpability in regards to her accident.  Plaintiff argues that Pilot knew falls were a primary danger associated with its facilities and therefore was wanton in preventing the malfunction of the grate.  Plaintiff's chief piece of evidence for willfulness appears to be the testimony of Ernest Bell, Pilot's lead maintenance man at the Tuscaloosa facility.  Bell apparently failed to repair or replace the grate in question following the accident, noting that "it wasn't broke all the way through and it was still sitting up." (Doc. 35, Ex. L, Bell Depo. at 143-44.)  While this action may have been evidence of wantonness in any future accident involving the grate, it does not show, and it does not appear to be the case, that Pilot knew of the imminent failure of the grate in question.  While Pilot may have been negligent in conducting the inspections that may have revealed defects in the grate in question, there is no evidence it willfully ignored those defects despite the risk of injury they posed.  Therefore, on the issue of wantonness, Pilot's motion for summary judgment is granted.

V.      Conclusion.

Having considered Plaintiff's allegations and the evidence presented, it is apparent to this Court that the evidence is sufficient to create a jury question as to whether Pilot was negligent.  Therefore, Defendant's motion for summary judgment is due to be DENIED as to negligence.  Defendant's motion for summary judgment as to wantonness is GRANTED.  A separate order will be entered.

Done this 20th day of April 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671